IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DR. PAMELLA E. SETTLEGOODE, | ) | |
| | ) | |
| Plaintiff, | ) | CV-00-313-ST |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| PORTLAND PUBLIC SCHOOLS, Multnomah | ) | |
| School District No. 1; SUSAN WINTHROP; | ) | |
| ROBERT CREBO; and LARRY WHITSON, | ) | |
| | ) | |
| Defendants. | ) | |

STEWART, Magistrate Judge:

## **INTRODUCTION**

Plaintiff, Dr. Pamella E. Settlegoode, was an Adaptive Physical Education teacher who taught physical education to students with disabilities for defendant Portland Public Schools ("the District") for the 1998-99 and 1999-2000 school years. In June 1999, plaintiff began reporting incidents and situations of what she perceived to be discrimination against students

1 - OPINION AND ORDER

with disabilities. In March 2000, the District declined to renew her probationary contract for the 2000-01 school year. By failing to renew her contract, plaintiff alleged that the District and its employees, Susan Winthrop ("Winthrop"), Robert Crebo ("Crebo") and Larry Whitson ("Whitson") retaliated against her. Accordingly, plaintiff alleged that all defendants violated § 504 of the Rehabilitation Act, 29 USC § 794 (Claim One), and 42 USC § 1983 ("§ 1983") based on a violation of her First Amendment free speech rights (Claim Two). She also alleged that the District violated the Equal Pay Act (Claim Three) and Oregon's Whistleblower Act, ORS 659.530 (Claim Four).

Before trial, plaintiff voluntarily dismissed her claim for violation of the Equal Pay Act (Claim Three) and all claims against Whitson. The remaining claims were tried for eight days before a jury. On November 16, 2001, the jury returned a verdict in plaintiff's favor on all claims and awarded her the full amount of damages she sought on each claim, namely $500,000 non-economic damages, $402,000 economic damages, and $50,000 punitive damages against both Winthrop and Crebo for violating § 1983 (Claim Two).

Defendants then filed Motions for Judgment as a Matter of Law, Mistrial, and New Trial which this court granted in part and denied in part. Accordingly, on January 31, 2002, the court directed entry of judgment in favor of defendants. Plaintiff then appealed that ruling. On June 14, 2004, this court received a mandate from the Ninth Circuit reversing this court and reinstating the jury verdict in plaintiff's favor. *Settlegoode v. Portland Public Schools*, 371 F3d 503 (9th Cir 2004).

Pursuant to 29 USC § 794a(b), 42 USC § 1988(b), ORS 659A.886(5)(d), and FRCP 54(d), plaintiff now seeks an award of attorney fees in the sum of $377,867.50 and costs in the

sum of $19,425.75.  Defendants object to these requests as unreasonable and unsupported.  For

the reasons set forth below, plaintiff is awarded attorney fees in the sum of $183,794.00 and the

Bill of Costs is granted in the sum of $17,184.08.

## DISCUSSION

**I. Attorney Fees**

    **A.  Standard to Determine Reasonable Attorney Fees**

    The parties agree that the standard for determining a reasonable attorney fee in this case

is set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67, 70 (9th Cir 1975).  Calculation of a

reasonable fee award occurs in two steps:

> First, the court must calculate the "lodestar figure" by taking the number
> of hours reasonably expended on the litigation and multiplying it by a
> reasonable hourly rate.  Second, the court must decide whether to enhance
> or reduce the lodestar figure based on an evaluation of the *Kerr* factors
> that are not already subsumed in the initial lodestar calculation.

*Fischer v. SJB-P.D. Inc.*, 214 F3d 1115, 1119 (9th Cir 2000) (citation omitted).

    Four of the twelve *Kerr* factors are subsumed in the determination of a reasonable hourly

rate: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel;

(3) the quality of the representation and the results obtained; and (4) the superior performance of

counsel.  *Blum v. Stenson*, 465 US 886, 898-90 (1984).  *Kerr* lists eight other factors that can be

considered in determining a reasonable attorney fee award: (1) the time and labor required;

(2) preclusion of employment; (3) the customary fee; (4) whether the fee is fixed or contingent;

(5) skill requisite to perform the services; (6) the "undesirability" of the case; (7) time limitations

and the nature and length of the professional relationship with the client; and (8) awards in

similar cases. *Kerr*, 526 F2d at 70. However, enhancing a fee award because a case is taken on a contingent basis is improper. *See City of Burlington v. Dague*, 505 US 557, 566 (1992).

**B. Hourly Rates**

Plaintiff was represented by three attorneys. Her husband, William Goode, incurred time from January 2000 through trial in November 2001, and on post-trial work through March 2002 and after April 2004. Gregory Kafoury and Mark McDougal were hired to handle the trial and, except for some initial contacts in late 2000 and a few hours in 2002 and 2005, incurred time primarily from September 16 through December 12, 2001. As for the hourly rates, plaintiff proposes $400 for Gregory Kafoury, $350 for Mark McDougal, and $250 for William Goode. As discussed below, this court concludes that these are not reasonable hourly rates for this case.

**1. Relevant Factors**

Courts determine a reasonable hourly rate by looking to the prevailing market rates in the market in which the work was performed. *Blum*, 465 US at 895. These rates are set by determining what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Id* at 895 n 11. In order to meet this burden of proof, the fee applicant must "produce satisfactory evidence - in addition to the attorney's own affidavits" that the requested rates are prevailing market rates under this standard. *Id*.

As a benchmark for the prevailing market rates, this court looks to the Oregon State Bar's Economic Survey (the "Economic Survey"). Message From the Court Regarding Attorney Fee Petitions, available at: http://www.uscourts.ord.gov/attorney_fee_statement.pdf ("Court's Website"). The bulk of Goode's time and practically all of Kafoury's and McDougal's time was incurred in 2001. Thus, the most recent Economic Survey issued in 2002 is close to the relevant

time period. The 2002 Economic Survey lists the average hourly rate for plaintiff's civil litigation (excluding personal injury) in Portland as $186. It also lists a range of rates for this same category from $160 at the 25th percentile up to $263 at the 95th percentile, with $200 as the median rate.

As noted in the 2002 Economic Survey, the hourly rates are generally higher with more years admitted to practice. Based on their dates of admission to the Oregon Bar, by 2001 Kafoury has been practicing law for 27 years since 1974; Goode had been practicing law for 17 years since 1984; and McDougal had been practicing law 12 years since 1989. For all lawyers admitted to practice in Portland for 21-30 years, such as Kafoury, the average hourly rate (without regard to practice area or firm size) was $227 and the median was $225. For lawyers admitted to practice in Portland 16-20 years, such as Goode in 2002, the average hourly rate (without regard to practice area or firm size) was $213 and the median was $218. And for lawyers admitted to practice in Portland 10-12 years, such as McDougal, the average hourly rate (without regard to practice area or firm size) was $187 and the median was $180.

## 2. **Kafoury and McDougal**

Unlike most attorneys in this legal community, Kafoury and McDougal do not bill their clients by the hour. Therefore, to reach their proposed hourly rates of $400 and $350, Kafoury and McDougal divide their gross revenues by their estimated billable hours. This bold method of reverse-engineering is not only unsupported by any legal principle, but also results in hourly rates that do not reflect the marketplace.

Kafoury and McDougal estimate that they each bill about 1,500 hours per year and divide their gross receipts by an approximate number of billable hours per year. Their gross receipts,

however, appear to have come from contingent fee cases, not cases in which a client pays a reasonable hourly rate. No case law permits this type of calculation to determine a reasonable rate under the fee statutes applicable in this case. Presumably, there is no authority for this method because the method is an illogical way to determine a reasonable hourly rate. Take, for example, a $100 million judgment. Assuming that the case took three years through trial with two attorneys billing 1,500 "billable" hours a year and a 33% contingency fee, then under Kafoury and McDougal's method of rate calculation, a reasonable hourly rate would be $3,666.66 ($33,000,000 ÷ 9,000). Similarly, if Kafoury and McDougal lost a contingent fee case, their analysis would lead to a reasonable hourly rate of $0.

As this illustration demonstrates, the problem with reverse-engineering an hourly rate based on gross revenues derived from contingency fee work is that contingency fees include a "risk premium" which rewards attorneys for taking a case with no guarantee of being paid and a substantial risk of losing their outlay of time and other resources. Any such analysis of risk is irrelevant to assessing the reasonableness of an hourly rate, which is premised upon an attorney being paid for his time and taking no such risk.

Plaintiff's supporting declarations by Larry Wobbrock and Charles Williamson do not show that the method used by Kafoury and McDougal is appropriate. Because Kafoury and McDougal is "one of the few plaintiff's firms" that has had consistent success, Williamson, who has been practicing law in Portland since 1970, "would rank them in the top percentage of plaintiff's law firms." Affidavit of Charles Williamson, ¶ 5. He also opines that their requested hourly rates are "at the high end of hourly rates for lawyers in Portland, Oregon" and "having reviewed the Affidavit of Mark McDougal with regard to the legal fees of the firm, there can be

little doubt that lawyers in firms that regularly bill by the hour who generated such fees would command rates of at least $350 and $400 an hour." *Id*, ¶ 6. He believes that these rates "are particularly appropriate for Kafoury and McDougal in a case involving civil rights as the firm is known and well respected for its advocacy of politically charged cases and their successful results in trials of such a nature." *Id*, ¶ 7.

Wobbrock, who has been practicing law in Oregon since 1977, also opines that Kafoury and McDougal "have a reputation of being very skilled and tenacious advocates who are especially good at crafting their presentation to a jury [and] are known for taking on unusual cases and politically charged issues." Affidavit of Lawrence Wobbrock, ¶ 6. While he does "not normally charge by the hour," he "recently was asked to perform work for an hourly fee where [he] charged and was paid $375.00 [an] hour." *Id*, ¶ 5. Therefore, he concludes that the requested hourly rates "are appropriate given their skill level and the fact that the rate is for work performed in their area of skill, namely, litigation." *Id*, ¶ 7.

Notably, neither Williamson nor Wobbrock state whether they reviewed the pleadings or files of this case or know anything about it. Both simply rely on the reputations of Kafoury and McDougal and their successful result and apparently assume that this case commands a high hourly rate because it was unusual or politically charged. In fact, this case was neither, but was primarily an employment case with First Amendment overtones involving a terminated teacher. Neither Williamson nor Wobbrock compare or contrast the requested rates with other similar types of cases or other similar attorneys. This court acknowledges that a few lawyers in large firms in Portland do charge $350-400 an hour, but, as can be seen from the 2002 Economic Survey, the highest hourly rates are charged in other categories of cases, namely "Bankruptcy,"

"Business/Corporate-Litigation," "Business/Corporate-Transactional," and "Real Estate/Land Use/Environmental Law."[1]  If this case fell in one of those categories, which it does not, then perhaps the opinions of Williamson and Wobbrock would provide some helpful evidence. However, they lack the context necessary to assist this court in determining a reasonable hourly rate for Kafoury and McDougal in this case.

### 3. Goode

Goode has submitted no evidence in support of his requested hourly rate, other than his own affidavit.  He states that he has had 408 trials and been victorious in 389.  However, Goode's work is primarily in the area of small-dollar collection actions.  Declaration of Bruce A. Rubin ¶ 4, Ex. 1.  He has handled some cases related to employment and civil rights. Supplemental Declaration of William R. Goode, p. 3.  However, he does not purport to be a highly experienced employment or civil rights attorney, such that any particular efficiency from that expertise would justify a high rate.

Goode points out that in a recent case which settled, the defendant agreed that $250 an hour was a reasonable hourly rate for him and that $250 "has been [his] attorney fee contract rate for over three years."  *Id*, ¶ 2.  However, he also concedes that no court has yet determined his reasonable hourly rate in the face of an objection by an opposing party.  Therefore, this court places little stock on the hourly rate obtained by Goode through settlement or on what Goode believes his time is worth.  A contract rate does not always reflect the customary market rate for similar services.  Instead, the issue is what a lawyer of comparable skill, experience, and reputation could command in Portland for the work performed in this case.  In that regard, it is

---

[1] Although patent and trademark litigation also commands a high hourly rate, it is not listed as a separate category in the 2002 Economic Survey.

important to note that Goode, a solo practitioner, works from his home and therefore has substantially less overhead than most other attorneys who work out of leased space.

### 4. Conclusion

Three of the four "subsumed" factors weigh against high hourly rates such as those sought by plaintiff's attorneys. The issues were not novel or complex. Plaintiff's case was a standard retaliation case. Although this case did involve civil rights issues, it primarily involved plaintiff's termination of employment, and none of plaintiff's attorneys holds himself out as an employment attorney or an attorney who regularly pursues employment claims. A specialist in an area can command a higher hourly rate than average because a specialist takes less time than a nonspecialist to do the same amount of work.

Despite plaintiff's success in persuading the jury, the quality of her legal representation does not support a high hourly rate. Prior to trial, Goode's work resulted in unnecessary discovery disputes about such issues as combining interrogatories. This court had to enter an order restricting depositions taken by Goode to seven hours each because of his purported need to exceed that limit. This court also sanctioned Settlegoode after Goode appeared without notice at the scheduled independent medical examination and insisted on being allowed to attend. Engaging in these tactics lengthened the litigation. Although the performance of plaintiff's attorney were sufficient to obtain a favorable jury verdict, their proposed hourly rates grossly overinflate their value in this case.

As a point of comparison, this court notes that defendants' primary trial attorney, Bruce Rubin who was admitted to the Oregon State Bar in 1976, charged an average of $196.40 per hour for this case. *See* Declaration of Bruce A. Ruben in Support of Defendants' Motions for

Attorney Fees (docket #197), Exhibit 4. Although the District, as a public entity, was charged a substantially reduced rate by its attorneys, this is some additional evidence as to what lawyers of comparable skill, experience, and reputation command in Portland for work performed in this case. This court sees no reason why plaintiff's attorneys should recover substantially more per hour.

Plaintiff has failed to produce satisfactory evidence that the hourly rates requested by any of her attorneys are justified in this case. Therefore, this court concludes that a determination of a reasonable hourly rate for plaintiff's attorneys must be based primarily on the 2002 average hourly rate of $186 for plaintiff's civil litigation. If anything, this survey benefits plaintiff since it lists hourly rates which presumably are higher than in 2001 when most of the time was incurred in this case.

In recognition of Kafoury's skill, experience and reputation and the fact that he handled most of the trial, his rate should be higher than average. Therefore, this court increases the average rate by over 25% to $235 for Kafoury. Given McDougal's lesser skill, experience and reputation, his hourly rate is set at $186, which is the not only the same as the 2002 average for plaintiff's civil litigation, but also is only $1 per hour lower than the 2002 average for lawyers in Portland with his years of experience.

Whether Goode should be awarded a higher rate than McDougal is problematic. Goode handled only the pre-trial and post-trial work in this case, apparently in recognition that Kafoury and McDougal possessed better trial skills. He also has less office overhead. Therefore, for the work performed in this case, McDougal and Goode are virtually indistinguishable. However, in

recognition that Goode has been practicing law five years longer than McDougal, this court sets his hourly rate somewhat higher at $200 which is more than generous.

### C.  Number of Hours

The burden to show that the requested number of hours for an attorney fee petition is reasonable is on the party seeking the fee. *Cunningham v. County of Los Angeles*, 879 F2d 481, 487 (9th Cir 1988), *cert denied*, 493 US 1035 (1990).  Defendants contend that number of hours requested by plaintiff's attorneys is unreasonable for several reasons.

First, defendants object on the basis that Kafoury and McDougal failed to keep contemporaneous time records to support their fee petition.  Instead, they "compiled" their hours from a review of electronic data and a variety of documents combined with "memory of hours worked."  Declaration of Gregory Kafoury, p. 2; Declaration of Mark McDougal, ¶ 3.  This method of record-keeping necessarily results in a very rough estimate of hours.  For example, Kafoury and McDougal claim to have worked a round number of hours almost every day, as well as 14 hours a day nearly every day for 12 days between November 3 and 14, 2001.  That is highly unlikely, given the need for periodic breaks to eat and rest.  And even if they did work that many hours for that many days, their efficiency and productivity would have suffered significantly.

A court may discount requested attorney hours if the attorney fails to keep "meticulous, contemporaneous time records . . . that reveal for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Jane L. v. Bangerter*, 61 F3d 1505, 1510 (10th Cir 1995) (affirming district court's reduction of fee award by 35% percent because of failure to adequately document how large blocks of time

were utilized, requesting payment for duplicative work, and requesting attorney fees for clerical

tasks that are overhead).  In fact, a court can choose to award no fees when records are not

properly kept.  *Prineville Sawmill Co. v. Longview Fibre Co.*, No. CV 01-1073-BR, Opinion and

Order, p. 6 (D Or Sept. 23, 2003).

Given the inadequacy of Kafoury and McDougal's record-keeping, for which they

provide no explanation, this court attributes considerably less weight to their estimated hours

than to contemporaneous time entries reflecting each day's activity.  Clearly Kafoury and

McDougal had to spend time preparing for and attending trial.  The issue is whether those hours

expended were reasonable since the court may "exclude . .  hours that were not 'reasonably

expended.'"  *Hensley*, 461 US at 434.  As explained below, not all of the hours estimated by

Kafoury and McDougal were reasonable.

Defendants also complain that Kafoury and McDougal "block billed" their time.  *See

Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F3d 1533, 1554 n15 (10th Cir 1996) (block

billing is the method by which the total daily time spent working on a case is entered into bills

rather than itemizing time spent on specific tasks).  For example, Kafoury's November 3, 2001,

entry for 14 hours states:  "Further trial preparation, depo outline, trial notebook, discussions

with McDougal re: strategy, work on direct exams[.]"  Or even more conclusory, the entry on

November 4, 2001, for 14 hours states: "Trial preparation, direct exams."  Because these entries

lump every activity together, defendants claim that it is impossible to analyze what portion of

time was allocated to what task.

Because block-billing makes assessing the reasonableness of the time spent on a

particular task extremely difficult, this Court's Website:

recommends that members of the bar record time spent on particular, individual tasks and support their fee petitions with a level of documentation that allows the Court, and opposing counsel, to adequately review the reasonableness of the time spent on a single task. . . . Because the burden to document the reasonableness of the requested fees is on the attorney requesting fees, fee petitions that fail to support the reasonableness of the request due to one of these problems may be denied, at least in part.

Because Kafoury's and McDougal's time entries are not contemporaneous and are merely estimates, it is not surprising that they do not itemize the time spent on specific tasks. Given the difficulty presented by such time entries, this court must necessarily err on the side of defendants.

In determining a reasonable number of hours, duplication must be excluded from any fee award:

Counsel for the prevailing party shall make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Hensley*, 461 US at 434 (citation omitted).

Such duplication of work inevitably resulted from Goode starting the litigation and then turning it over to Kafoury and McDougal for trial. Time had to be spent by Goode to bring Kafoury and McDougal "up to speed." Yet plaintiff's attorneys made no such effort to exclude redundant hours. In fact, the billings attached to the affidavits reveal substantial duplication of work between the three attorneys in trial preparation, attending trial, and communicating with each other.

It is unreasonable to require the losing party to pay for any unnecessary duplication of effort between two or three lawyers representing the prevailing party. A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent. Instead it can only shift the reasonable attorney fee expended. A fee that is not excessive may still be unreasonable. When attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys. The same good "billing judgment" requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument or trial.

Therefore, this court finds that the number of hours should be reduced commensurate with the unnecessary duplication of effort by plaintiff's attorneys. All three attorneys prepared for and attended trial. Of Kafoury's 244.45 total hours, 4 were spent in 2000; the rest were spent in 2001 before trial (80.2), during trial (133), and after trial (27.25), for a total of 240.45 trial-related hours (80.2 + 133 + 27.25). Of McDougal's 262.75 hours, 2.5 were spent in 2000 and 7.75 in 2002 and 2005; the rest were spent in 2001 before trial (95.25), during trial (130.5), and after trial (27.00), for a total of 252.50 trial-related hours in 2001 (95.00 + 130.5 + 27.00). In addition, Goode spent 85.3 hours from September 25 through November 2, 2001, preparing for trial, 102.2 hours during trial, and 47.9 hours after trial through the end of 2001, for a total of 235.4 trial-related hours (85.3 + 102.2 + 47.9). In 2001 alone these three lawyers combined spent 264.75 hours in 2001 preparing for trial, 365.7 hours during trial, and another 109.9 hours after trial, for a total of over 740 hours for a trial that lasted only 8 days.

In contrast, this court calculates that defendants' attorneys, including associates and paralegals, spent about 224.2 hours during trial. Although this time likely included some

duplication, it is still about 60% of the hours allegedly expended by plaintiff's attorneys during trial. Of course, as plaintiff points out, defendants' attorneys spent more hours than plaintiff's attorneys overall, but they properly recorded their time, delegated work to individuals with the lowest billing rate, suffered a change of counsel, and represented four clients. Lower billing rates reflect the fact that more time will be required to complete the tasks and, of course, some tasks are clerical and can be done by non-lawyers with even lower billing rates. Yet plaintiff's attorneys failed to delegate any tasks to less expensive associates, paralegals, or administrative staff.

With respect to trial preparation and the trial itself, all three of plaintiff's attorneys charged for lengthy conferences with one another. For example, all three billed 2.5 hours on 11/28/00 and on 11/10/01 for a conference; each billed differing amounts from 2.0 to 4.0 hours on 10/14/01 for another conference; and Goode billed 3.5 hours for conferring with Kafoury on 11/3/01 when both Kafoury and McDougal billed a total of 14 hours for that day. Such duplication by all conferring attorneys cannot be recovered as part of a reasonable attorney fee.

Because the hours are excessive and duplicative, and, at least for Kafoury and McDougal, are based on inaccurate estimates with block-billing, this court concludes that the hours billed by each of plaintiff's attorneys in 2001 for trial preparation and trial should be substantially reduced. Although defendants urge a reduction of 50%, this court believes that, based on the number of hours expended by defendants' attorneys, a one-third reduction is more reasonable. A one-third reduction accounts for the time of a third lawyer whose time could have been substantially reduced or eliminated had there been no change of counsel for the purpose of trial.

The remainder of Goode's hours include a substantial number that are not recoverable or are not adequately described. One category includes billings by Goode for tasks that are unrelated to the claims in this lawsuit, namely: plaintiff's direct dealings with the District about her nonrenewal prior to filing the lawsuit; the union's unsuccessful pursuit of an arbitration on behalf of plaintiff; and defending defendants' motion for attorney fees based on Kafoury's actions during trial. None of that time is properly allocable to the pursuit of plaintiff's claims. Although plaintiff contends that she should be able to recover time incurred to respond to a motion for attorney fees made by defendants, that motion was precipitated by the conduct of her attorneys. She is not entitled to be awarded at this juncture by recovering attorney fees from defendants that should never have been incurred or, at the very least, could easily have been avoided.

Based on their review, defendants have listed the time entries unrelated to plaintiff's claims, totaling .75 hour for McDougal and 28.7 hours for Goode. Declaration of J. Michael Porter, Exhibit 2, pp. 1, 5. However, defendants' list of entries by Goode is not quite accurate. It fails to include several additional time entries for these same unrelated issues: 4.1 hours on arbitration/union matters[2] and 27 hours on defendants' motion for attorney fees.[3] Thus, the total number of hours incurred by Goode unrelated to plaintiff's claims is 59.8 hours.

A second category of hours billed by Goode includes administrative tasks such as hand-delivering materials to defendants' attorneys (which could have been accomplished for less by a delivery service) and for scanning or faxing documents. These functions are routinely performed

---

[2] The additional time entries are 3/23/00 (.6 + 1.5), 4/3/01 (.5) and 4/11/01 (1.5).

[3] The additional time entries are 2/25/02 (1.0), 2/6/02 (3.0), 3/7/02 (1.5), 3/15/02 (2.5), 3/15/02 (6.0), 3/17/02 (7.0), 3/18/02 (1.5 + 4.0) and 5/16/02 (.5).

by non-lawyers, do not qualify as legal work and are not properly recoverable as attorney fees. Defendants have listed those time entries, totaling 10.4 hours. Declaration of J. Michael Porter, Exhibit 2, p. 4. However, that list is not quite accurate. It improperly includes 6.5 hours on 11/11/01 for trial preparation and fails to include other clerical time by Goode of 1.3 hours.[4] Making these adjustments results in a total deduction of 5.2 hours.

In a third category, defendants list time entries by Goode totaling 31.2 hours and by Kafoury totaling 4.4 hours that contain insufficient descriptions or are otherwise unclear. *Id* at 2 & 6. Although some of those entries are not as precise as the court prefers, they are not so imprecise as to be excluded. At times, this court was unable to find a corresponding time entry by defendants' attorneys, such as a telephone call, but defendants' attorneys may have chosen not to bill that time.

However, in reviewing Goode's time entries, this court finds other time that is clearly excessive, such as lengthy conferences with his client (his wife) on legal (not factual) issues (14.3 hours for 9 conferences),[5] preparing his client (his wife) for her deposition (7.6 hours)[6] and IME (5.8 hours),[7] and preparing for and reviewing the transcripts of other depositions which in some cases took nearly as long, if not longer, than taking the depositions themselves (32.2

---

[4]  The additional time entries are 3/24/00 (.1 + .2), 5/19/00 (.2 ( half of .4)), 7/10/00 (.1), 7/14/00 (.1), 7/9/01 (.3) and 11/02/01 (.3).

[5]  These time entries are 2/25/02 (1.6), 3/2/02 (2.0), 4/7/02 (.8), 6/13/00 (1.3), 6/24/00 (1.2), 7/9/00 (2.0), 8/23/00 (.4), 10/26/00 (3.0), 11/28/00 (2.0), for a total of 14.3 hours.

[6]  These time entries are 6/21/00 (.3 + .5 + .3) and 8/23/00 (6.5), for a total of 7.6 hours..

[7]  This time entry is 9/16/00 (5.8).

hours).[8]  Based on this court's experience from reviewing many other attorney fee petitions and based on common sense, all of these tasks should have taken far less time.  The time spent on conferences with plaintiff about legal issues is reduced to .5 hour each (9 x .5 = 4.5 hours), for a total reduction of  9.8 hours (14.3 - 4.5).  The time spent on preparing plaintiff for her deposition and IME is reduced from 13.4 hours to 3.0 hours, for a total reduction of 10.4 hours.  And the time spent on preparing for and reviewing the transcripts of other depositions is reduced from 32.2 hours to 20 hours, for a total reduction of 12.2 hours.  These three deductions total 32.4 hours (9.8 + 10.4 + 12.2).

In addition, Goode also spent 1.2 hours on 5/12/00 reviewing Findings and Recommendation that should have taken not more than .5 hour; 4.2 hours on 9/6/02 reviewing a letter from opposing counsel that should not have taken more than .2 hour; 4.7 hours reviewing another letter from opposing counsel that should not have taken more than .2 hour; 7.0 hours reviewing another letter from opposing counsel that should not have taken more than .2 hour.  In addition, the records include a duplicate time entry of .3 hours on 6/21/00.   These deductions total another 12.3 hours (.7 + 4.5 + 6.8 + .3), for a total deduction for excessive time of 44.7 hours (32.4 + 12.3).

As a result, the number of hours incurred by Goode is reduced by 109.7, which includes 59.8 hours for unrelated items, 5.2 hours for clerical work, and 44.7 hours for excessive time.  Of these hours, only 1.2 hours were incurred in late 2001.  Because this court is reducing Goode's hours in late 2001 by one-third, 1.2 hours must first be deducted from his total trial-related hours

---

[8]  These time entries are on 7/10/00 (6.5), 8/28/00 (4.1 + 2.3 + 1.8), 11/29/00 (7.0), 12/10/00 (6.5), 12/24/00 (2.1 + 1.9), for a total of 32.2 hours. These are not all of Goode's time entries related to depositions, and further deductions for excessive time may well be warranted if the court elected to spend more time analyzing the time entries.

incurred in 2001 to avoid a double deduction. Therefore, Goode's total 2001 trial-related hours are reduced from 235.4 to 234.2 hours.

Thus, an appropriate attorney fee award in this case is calculated as follows:

Kafoury:

| | |
|---|---|
| Claimed Hours: | 244.45 |
| Less 1/3 reduction in 2001 hours: | (80.15) |
| (244.45 - 4.0 = 240.45 ÷ 3 = 80.15) | |
| Subtotal: | 164.30 |
| 164.30 hours @ $235/hour: | $ 38,610.50 |

McDougal:

| | |
|---|---|
| Claimed Hours: | 262.75 |
| Less non-recoverable hours: | ( .75) |
| Subtotal: | 262.00 |
| Less 1/3 reduction in 2001 hours: | (83.92) |
| (262.00 - 10.25 = 251.75 ÷ 3 = 83.92) | |
| Subtotal: | 178.08 |
| 178.08 hours @ $186/hour: | $ 33,123.50 |

Goode:

| | |
|---|---|
| Claimed Hours: | 747.80 |
| Less non-recoverable hours: | (109.70) |
| Subtotal: | 638.10 |
| Less 1/3 reduction in 2001 hours: | (78.07) |
| (235.4 - 1.2 = 234.2 ÷ 3 = 78.07) | |
| Subtotal: | 560.03 |
| 560.03 hours @ $200/hour: | $112,060.00 |

| | |
|---|---|
| TOTAL: | $183,794.00 |

Although quite high, this amount is not necessarily outside the range of a reasonable attorney fee for similar types of cases with a similar length of trial. Coincidentally, it is close to the figure suggested by defendant despite the differences between defendants' and this court's analyses.

This court previously already granted defendants' motion for sanctions in the sum of $400.00 against plaintiff for refusing to be examined by Dr. Turco without Goode being present. If this amount has not yet been paid, it should be deducted by defendants.

## II. Bill of Costs

This court has the discretion to award costs to a prevailing party pursuant to FRCP 54(d). However, this rule is not read "as giving district judges unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur in the conduct of his case." *Farmer v. Arabian Am. Oil Co.*, 379 US 227, 235 (1964). The expenses which may be taxed as costs are enumerated in 28 USC § 1920. With regard to costs not specifically allowable by statute, district courts have only limited discretion which should be exercised sparingly. *Guinasso v. Pacific First Fed. Sav. & Loan Ass'n*, 100 FRD 264, 265 (D Or 1983).

Defendants object to the requested $255.00 fee of the Clerk because the fee was only $105.00. This objection is well-taken and the fee is reduced from $255.00 to $105.00.

Defendants object to the requested $60.00 fee for service of summons and subpoena because plaintiff failed to attach supporting documentation for the fee. This objection is well-taken and this cost item is denied.

Defendants object to the requested $8,589.25 fee for the court reporter for all or any part of the transcript necessarily obtained for use in the case because plaintiff failed to attach supporting documentation for the deposition transcripts of Robert Crebo ($1,361.00) and Larry Whitson ($1,384.25). In response to this objection, plaintiff submitted copies of invoices for $1,361.00 for the deposition of Robert Crebo and for $1,384.25 for the depositions of both

Larry Whitson and Carol Matarazzo.  Supplemental Declaration of William R. Goode, ¶ 3.

Therefore, these costs are allowed.

Plaintiff also submitted invoices for the transcripts of the second and third volumes of her

deposition for $568.75 and $441.75 respectively.  *Id.*  She inadvertently omitted these costs from

the Bill of Costs.  Defendants object to taxing these costs as belatedly submitted.  However, it is

evident that these costs were incurred and are recoverable.  Therefore, this court allows

amendment of the Bill of Costs and allows an increase of $1,010.50.

Defendants object to the costs requested as shown on the Mandate from the Court of

Appeals of $1,614.40 because those costs have been paid.  This objection is well-taken and these

costs are denied.

Defendants object to the request for $7,341.89 for trial transcripts because plaintiff

appears to be requesting costs for late fees assessed by vendors for not paying invoices in a

timely manner.  Plaintiff attaches supporting documentation for only $6,903.62 (excluding

the apparent late fees) of charges by court reporters for trial transcripts.  Therefore, these costs

are reduced from $7,341.89 to $6,903.62.

Defendants object the request for $989.50 in costs for the mediation. Mediation fees are

not listed as taxable costs under 28 USC § 1920 and plaintiff cites no statutory or other authority

permitting the taxation of mediation fees.  Other courts have held that mediation fees are not

taxable costs.  *See Brisco-Wade v. Carnahan*, 297 F3d 781, 782-83 (8th Cir 2002) (mediation

fees are not recoverable in a Title VII case), citing *Mota v. Univ. of Tex. Houston Health Sci.*

*Ctr.*, 261 F3d 512, 529-30 (5th Cir 2001) (court abused its discretion in taxing losing party with

costs of mediation in Title VII case).  Therefore, these costs are denied.

After deducting these amounts, plaintiff is awarded the following costs:

| | |
|---|---|
| Fees of the Clerk: | $    105.00 |
| Fees of the court reporter: | 9,599.75 |
| Fees and disbursements for printing: | 575.71 |
| Other costs: Trial Transcripts | 6,903.62 |
| TOTAL: | $17,184.08 |

## ORDER

For the reasons set forth above, plaintiff's Motion for Attorney Fees (docket #262) is GRANTED in the sum of $183,794.00 and the Bill of Costs (docket #260) is GRANTED in the sum of $17,184.08.

DATED this 9th  day of August, 2005.


/s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge